IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

Civil Action No. 5:17-CV-00371-BO

| | | |
|---|---|---|
| KENDA R. KIRBY, | ) | |
| | ) | **MEMORANDUM OF LAW IN** |
| Plaintiff, | ) | **SUPPORT OF DEFENDANT'S** |
| | ) | **MOTION TO DISMISS** |
| v. | ) | |
| | ) | FED. R. CIV. P. |
| STATE OF NORTH CAROLINA, | ) | **12 (b) (1) and (6)** |
| | ) | |
| Defendant. | ) | |

**NOW COMES** Defendant, State of North Carolina, by and through undersigned counsel, and hereby respectfully submits this Memorandum of Law in support of its Motion to Dismiss filed pursuant to Rule 12 (b) (1) and (6) of the Federal Rules of Civil Procedure.

## NATURE OF THE CASE

Plaintiff filed her complaint on 24 July 2017. [D.E. 1] By this action, plaintiff, a former student enrolled at North Carolina State University ("NCSU"), purports to make claims of discrimination and retaliation by the State of North Carolina ("the State") under Title IX of the Educational Amendments Act of 1972, 20 U.S.C. §1681 *et seq.*, ("Title IX") for refusing to refund an alleged overpayment of student loans which was motivated by "bias around Plaintiff's perceived gender nonconformity, sex, sexual orientation, gender, gender identity, and political affiliation or belief." [D.E. 1, pp. 4, 35] Specifically, plaintiff seeks to have her NCSU transcript from 1994 "corrected," to receive her Ph.D. degree in Cell Biology and Morphology, to have any outstanding bills of NCSU cancelled, to refund overpaid portions of Plaintiff's student loans with fees and

interest, as well as $13 Million in compensatory damages and $9.5 Million in punitive damages. [D.E. 1, p. 38]

## STATEMENT OF THE FACTS

In 1992, plaintiff was admitted into a Ph.D. program in NCSU's College of Veterinary Medicine. [D.E. 1, p. 6] Plaintiff was terminated from this program in the Spring of 1994 for failure to meet and satisfy the requirements of this program; this decision was upheld on appeal through NCSU's appeal process. [*Id.*, pp. 1, 10 and Ex. 11, 69, 120, 122] At the time that plaintiff was terminated from her graduate program, she was enrolled in one biochemistry class. [*Id.*, p. 11] Because she failed to properly withdraw from that class and from the University, she was charged for that one class; that charge of $321.00 remains today. [*Id.,* p. 3, 11] In addition, because she failed to properly withdraw from the class, a failing grade was entered on her transcript. [*Id.*]

In the summer of 2013, plaintiff attempted to obtain a copy of her transcript and was told that she could not obtain a copy until she paid the $321.00 bill still outstanding. [*Id.*, Ex. 9, See Compl. 5:13-CV-00850, Doc. 3-2, p. 3] In response to the notification of this unpaid bill for tuition for the biochemistry class in which she was enrolled in the Spring of 1994, Plaintiff filed an action against NCSU on January 13, 2014 for "breach of contract and violation of procedural due process motivated by bias around Complainant's perceived sex, sexual orientation, gender, gender identity, and political affiliation or belief." [*Id..*, Ex. 9, See Compl. 5:13-CV-00850] The complaint against NCSU appeared to include claims that certain actions of the defendant's personnel constituted violations of the First Amendment and equal protection and due process clauses of the Fourteenth Amendment of the United States Constitution, pursuant to 42 U.S.C. § 1983; conspiracy to violate

civil rights pursuant to 42 U.S.C. §1985; breach of contract; defamation; and intentional infliction of emotional distress. [*Id.*]

On April 8, 2014, the defendant, NCSU, filed a Motion to Dismiss pursuant to Rule 12(b)(6)(1)(2) and (6) of the Federal Rules of Civil Procedure. [*Id.*, See Ex. 8] NCSU argued that the action was barred against the university because it is an instrumentality of North Carolina and therefore protected by the Eleventh Amendment of the United States Constitution. Additionally, NCSU argued that this action was barred by the statute of limitation. [*Id.*] On January 23, 2015, a Magistrate Judge's Memorandum and Recommendation was entered granting NCSU's motion to dismiss. [*Id.*, See Ex. 12, App. C] Plaintiff filed objections to the Memorandum and Recommendation specifically challenging the Magistrate Judge's failure to address her claims concerning Title IX, and the recommendation to deny relief on her due process and equal protection claims. On March 10, 2014, the Honorable United States District Court Judge Louise W. Flanagan, after reviewing those portions of the Memorandum and Recommendation to which plaintiff objected, as well as the remaining portions of the Memorandum and Recommendation, adopted the Memorandum and Recommendation in full and granted NCSU's motion to dismiss. [*Id.*, See Ex. 12, App. B].

The plaintiff appealed the Order of March 10, 2014 to the Fourth Circuit Federal Court of Appeals and on July 21, 2015, Plaintiff filed a Motion to Allow New Issue Based on SCOTUS Decision. On September 2, 2015, the Fourth Circuit Federal Court of Appeals denied the Plaintiff's Motion to Allow a New Issue and affirmed the decision granting the motion to dismiss in Civil Action Number 15-1333. Plaintiff filed a Petition for Writ of Certiorari with the United States Supreme Court which placed on the docket at No. 15-8399. [*Id.*, See Ex. 5] On October 3, 2016,

the parties were notified that the Petition for Writ of Certiorari had been denied by the United States Supreme Court.

In this action filed by the Plaintiff against the State of North Carolina, she alleges all the same claims as in her previous suit against NCSU, but claims that the "new cause of action" is a document dated August 25, 1997 from the U.S. Department of Education, which she allegedly never received until January 31, 2017, which she purportedly shows that she overpaid her student loans to NCSU. [*Id., See* Ex. 4]. It is the plaintiff's claim that the defendant's refusal to "refund the overpayment in a timely manner indicates their intention to inflict further damage upon Plaintiff and as such, qualifies as a new cause of action under Plaintiff's previously filed grievance." [*Id.,* Compl. p.2] Plaintiff further alleges that the defendant's withholding of her overpayment for over twenty years caused disparate impact and perpetuated discrimination through compounding earlier harms and through retaliation in refusing to refund Plaintiff's money. [*Id.*, Compl. pp. 2-3]

The letter from the William B. Ford Federal Direct Loan Program ("Federal Loan Consolidation Program") dated August 25, 1997, states that on January 15, 1997, under the loan consolidation program in which the Plaintiff enrolled, the sum of $15,736.67 was disbursed to the North Carolina State Education Assistance Association ("NC SEAA") and she was given a refund of $63.02, because it was determined that with interest and fees calculated through the date of disbursement, the actual amount owed to the NC SEAA was $15,673.65. [*Id.*, See Ex. 4] In late February, 2017, the Plaintiff began emailing the NC SEAA inquiring about the loan balance paid to them on her behalf on January 15, 1997 by the Federal Loan Consolidation Program and how the loan balance was calculated. [*Id.*] On April 7, 2017, Sharon Grubb, FFELP Ombudsman for the NC SEAA, responded to the Plaintiff's email, confirming previous emails from other NC SEAA staff,

and advising that the Plaintiff's defaulted loans with NC SEAA "were paid in full for the proper amount through your Direct Loan consolidation loan and, as such, you ar not due a refund." [*Id.*] Attached to the email sent to the Plaintiff on April 4, 2017, a copy of which is included in Exhibit 4 to the Complaint and attached hereto as Exhibit 1, is a statement prepared by Sharon Grubb at NC SEAA, explaining exactly how the loan balance was determined and the interest and fees which were added to the principal balance after default on June 18, 1996.

Plaintiff erroneously believes that she is owed a refund for $3,045.90, the amount paid to NC SEAA in addition to the $12,627.75 which she owed at the time of default. The plaintiff apparently does not understand that she is also responsible for paying both the consolidation fee and accrued interest calculated from June 18, 1996 until the loan was paid off on January 15, 1997.

## QUESTIONS PRESENTED

I. SHOULD THIS ACTION AGAINST THE STATE OF NORTH CAROLINA BE DISMISSED BECAUSE OF ELEVENTH AMENDMENT IMMUNITY AND LACK OF SUBJECT MATTER JURISDICTION?

II. IS THIS ACTION BARRED BY THE STATUTE OF LIMITATIONS?

III. SHOULD THIS TITLE IX CLAIM BE DISMISSED FOR FAILURE TO STATE A CLAIM FOR WHICH RELIEF CAN BE GRANTED?

# ARGUMENT

## I. THE COURT LACKS JURISDICTION OVER THE STATE OF NORTH CAROLINA AND THE ACTION MUST THEREFORE BE DISMISSED.

Although plaintiff purports to bring this case against the State of North Carolina pursuant to Title IX of the Educational Amendments Act of 1972, 20 U.S.C. §1681 *et seq.*, ("Title IX") for discrimination, the Court lacks jurisdiction over the State in this case.

The Eleventh Amendment provides that "[t]he judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by citizens of another state, or by citizens or subjects of any foreign state." U.S. Const., Amend. XI. Although the text expressly provides states with immunity from suits brought by "citizens of another state, or by citizens or subjects of any foreign state" only, the immunity has been extended to suits brought by a state's own citizens. *Idaho v. Coeur d'Alene Tribe of Idaho*, 521 U.S. 261, 267-68 (1997). The Supreme Court "has consistently held that an unconsenting State is immune from suits brought in federal courts by her own citizens as well as by citizens of another State." *Booth v. Maryland*, 112 F.3d 139, 141 (4th Cir. 1997), quoting *Edelman v. Jordan*, 415 U.S. 651, 662-63 (1974).

There are three exceptions to the Eleventh Amendment's bar against suits. *Lee-Thomas v. Prince George's Cnty. Pub. Schs.*, 666 F.3d 244, 248-49 (4th Cir. 2012). The first applies when an individual sues "for prospective injunctive relief against state official acting in violation of federal law." *Id*. (quoting *Frew ex rel. Frew v. Hawkins*, 540 U.S. 431 437 (2004). That exception does not apply to any of the claims here, because the complaint does not name as defendants any state official. *See Lee-Thomas*, 666 F.3d at 249.

Second, a state may waive its immunity in federal court. *Lee-Thomas*, 666 F.3d at 249. The defendant, State of North Carolina, has not waived its Eleventh Amendment immunity nor consented to be sued in federal court in this case.

Third, Congress may abrogate Eleventh Amendment immunity without state consent by "unequivocally intend[ing] to do so and act[ing] pursuant to a valid grant of constitutional authority." *Id.* (quoting *Bd. of Trustees of Univ. of Ala. v. Garrett*, 531 U.S. 356, 363 (2001)); *Litman v. George Mason Univ.*, 186 F3d 544, 549 (4th Cir. 1999). In doing so, Congress acts under the authority of section 5 of the Fourteenth Amendment. *Litman*, 186 F.3d at 550. While it is true that "when acting pursuant to § 5 of the Fourteenth Amendment, Congress can abrogate the Eleventh Amendment without the States' consent," *Fitzpatrick v. Bitzer*, 427 U.S. 445, 456 (1976), such a waiver by Congress pursuant to its Fourteenth Amendment authority requires "an unequivocal expression of congressional intent to 'overturn' the constitutionally guaranteed immunity of the several States.'" *Pennhurst State Sch. and Hosp. v. Halderman*, 465 U.S. 89, 99 (1984), quoting *Quern v. Jordan*, 440 U.S. 332, 342 (1979).

Title IX, in conjunction with 42 U.S.C. §2000d-7(a)(1), represents Congress' expression of a "clear, unambiguous, and unequivocal condition of waiver of Eleventh Amendment immunity." *Litman,* 186 F.3d at 554. 20 U.S.C. §1681(a), which precludes the use of Title IX federal education funds for discriminatory purposes, was enacted under the Spending Clause of the Constitution, U.S. Const. art. I, § 8, cl. 1 ("The Congress shall have Power to lay and collect Taxes . . . to . . . provide for the . . . general Welfare of the United States."). *Id.* at 551. "In other words, in exercising its spending power, the federal government 'conditions an offer of federal funding on a promise by the recipient not to discriminate, in what amounts essentially to a contract between the Government and

the recipient of funds.'" *Id.* (quoting *Gebser v. Lago Vista Indep.School Dist.*, 524 U.S. 274, 118 S. Ct. 1989, 1997, 141 L. Ed. 2d 277 (1998)(citations omitted). It was NCSU, through the NC SEAA, not the defendant State of North Carolina, who applied to and accepted federal funding under Title IX. The State, therefore, has not waived its Eleventh Amendment Immunity. Where sovereign immunity under the Eleventh Amendment is not entangled in the merits of plaintiff's claims and is dispositive of the case, it is appropriate for the court to proceed under Rule 12(b)(1). *See Hendy v. Bello,* 555 Fed. Appx. 224, 226-27 (4th Cir. 6 Feb. 2014)(upholding dismissal on grounds of Eleventh Amendment immunity pursuant to Rule 12(b)(1))(citing *Vulcan Materials Co. V. Massiah*, 645 F.3d 249, 261 (4th Cir. 2011)); *cf. Plumer v. State of Md.,* 915 F.2d 927, 932 n. 5 (4th Cir. 1990)). Because the Court lacks jurisdiction over the State of North Carolina in this action, this action should be dismissed pursuant to Fed. R. Civ. P. 12(b)(1).

## II. THIS ACTION IS BARRED BY THE STATUTE OF LIMITATIONS.

This action is clearly time-barred. The complaint states that plaintiff is bringing claims under Title IX of the Educational Amendments Act of 1972, 20 U.S.C. §1681 *et seq*., ("Title IX"). Because the allegedly wrongful actions giving rise to plaintiffs' claims occurred more than twenty years ago, this action must be dismissed.

There is no federal statute of limitations for actions brought under Title IX, and accordingly, federal courts must borrow a limitations period from the most analogous statute of limitations of the forum state. In North Carolina, the applicable statute of limitations for this action is the three-year period for personal injury actions provided for by N.C. GEN. STAT. § 1-52(16). *See Wilmink v. Kanawha Cnty. Bd.of Educ.,* 214 F. App'x 294, 296 n. 3 (4th Cir. 2007)(per curiam)("[E]very circuit to consider the issue has held that Title IX . . . borrows the relevant state's statutes of limitations for

personal injury.") When an action accrues, however, remains a question of federal law. *Id.* "Under federal law, a cause of action accrues when the plaintiff possesses sufficient facts about the harm done to him that reasonable inquiry will reveal his cause of action." *Brooks v. City of Winston-Salem*, 85 F.3d 178, 181 (4th Cir. 1996)

Plaintiff's complaint seeks redress for actions that occurred in 1997 — after she consolidated her outstanding student loans by applying to and enrolling in the William B. Ford Federal Direct Loan Program. On January 15, 1997, the sum of $15,736.67 was disbursed by the William B. Ford Federal Direct Loan Program to the NC SEAA on the plaintiff's behalf and she was given a refund of $63.02. Assuming that plaintiff was discriminated against in the matters about which she complains, which the State denies, any such discrimination would have occurred in 1997, when NC SEAA was allegedly overpaid. There can be no doubt that plaintiff possessed sufficient facts in 1997 such that reasonable inquiry might have revealed any cause of action that might have been available to her. She specifically raised claims of discrimination in 1994 and again in 2013, but never alleged that her student loan from NC SEAA was overpaid in 1997. Without question, any cause of action which plaintiff might have had accrued in 1997,[1] well more than three years prior to the filing of this action. Because plaintiff waited over twenty years to pursue this claim before this Court, her complaint is barred by the statute of limitations as well as the doctrine of latches.

---

[1] To the extent that plaintiff might argue that the $3,045.90 refund did not accrue until January 31, 2017, when she claims to have learned about it, such an argument is unavailing because the amount in controversy would not exceed $75,000.00, which is necessary for this Court's diversity jurisdiction under 28 U.S.C. § 1332(a)(1), and plaintiff fails to set out factual allegations that would state a plausible claim of discrimination or retaliation under Title IX, so there is no federal question jurisdiction. For these reasons, the Complaint should be dismissed pursuant to Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction and 12(b)(6) for failure to state a claim upon which relief can be granted.

## III. THIS ACTION SHOULD BE DISMISSED FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF MAY BE GRANTED

Plaintiff's complaint lacks factual allegations that would allow the court to draw the reasonable inference that the State discriminated or retaliated against Plaintiff in violation of Title IX, and these claims must be dismissed under Fed. R. Civ. P. 12(b)(6). Title IX provides that "[n]o person . . . shall, *on the basis of sex*, be excluded from participation in, be denied benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance." 20 U.S.C. §1681(a) (emphasis added). Plaintiff has not pled sufficient facts to show that an alleged overpayment of money to NC SEAA in 1997 by the federal government pursuant to a loan consolidation program was the result of any gender bias in violation of Title IX. Plaintiff has failed to allege facts sufficient to support, or even create, an inference that would support her claim of gender discrimination. Plaintiff makes a hollow claim that the State of North Carolina (not NCSU, NC SEAA, or the William B. Ford Federal Direct Loan Program, the actual parties involved with the Plaintiff and her student loans which are at issue in this action) discriminated against her because of the State's perception of plaintiff's gender non-conformity with regard to traditional stereotypes of femaleness. [D.E. 1, p. 35]

The alleged discriminatory behavior complained of appears to be the denial by NC SEAA, not the State, of Plaintiff's request for a refund of a portion of the loan proceeds which it received in 1997 from the Federal Loan Consolidation Program. As is shown in Exhibit 1 to this Memorandum of Law, which exhibit was also attached by the Plaintiff to the Complaint as an exhibit, the clear reason NC SEAA denied Plaintiff's refund request was because she had not

overpaid her student loans, rather than alleged intentional discrimination based on the Plaintiff's gender.

Plaintiff has failed to meet her burden of alleging facts sufficient to support, or even create an inference that would support her claim of gender discrimination by the Defendant. Plaintiff's Title IX claim must be dismissed as she has not alleged that she was treated differently from a similarly situation person because of her gender. *See Brzonkala v. Va. Polytechnic Inst. & State Univ.*, 935 F. Supp 772, 777-79 (W.D. Va. 1996), *adopted at*, 169 F.3d 820, 827 n. 2 (4th Cir. 1999)(en banc) (dismissed Title IX claim because Plaintiff failed to meet her prima facie burden of creating an inference of gender discrimination by stating facts to show that she was treated differently from someone of the opposite gender who was similarly situated to her.)

Plaintiff's Title IX claim fails because she has not alleged any facts that could plausibly show intentional gender discrimination by the Defendant. According to the Fourth Circuit, a Title IX plaintiff must allege facts to show discriminatory intent. *Brzonkala*, 935 F. Supp at 776-79 ("In order to survive a motion to dismiss, the plaintiff must specifically allege the events claimed to constitute intentional discrimination as well as circumstances giving rise to a plausible inference of [ ] discriminatory intent"). Plaintiff has failed to set forth specific facts, not simply conclusory allegations, on this point.

While the complaint might allege discrimination on the basis of political viewpoint, such is not the subject of Title IX. Similarly, Title IX does not protect against discrimination based on actual or perceived sexual orientation. *See, Kirby v. N.C. State Univ.*, No. 5:13-cv-00850, at 9 (E.D.N.C Mar. 10, 2015). To survive a motion to dismiss for failure to state a claim upon which relief can be granted pursuant to Rule 12 (b)(6), a complaint must contain facts sufficient "to

raise a right to relief above the speculative level" and to satisfy the court that the claim is "plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007). The Plaintiff has failed to meet this burden and accordingly, this action should be dismissed pursuant to Fed. R. Civ. P. 12 (b) (6).

## **CONCLUSION**

For the foregoing reasons, Defendant State of North Carolina respectfully prays that this Court dismiss this action as against it.

Respectfully submitted, this the 20th day of September, 2017.

>JOSH STEIN
>ATTORNEY GENERAL
>
>
>/s/ Ann W. Matthews
>Ann W. Matthews
>Special Deputy Attorney General
>State Bar No. 15371
>amatthews@ncdoj.gov
>
>North Carolina Department of Justice
>Post Office Box 629
>Raleigh, NC  27602
>Telephone: 919.716.6920
>Facsimile:  919.716.6763

# CERTIFICATE OF SERVICE

I hereby certify that I have this day, September 20, 2017, filed the foregoing **MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS** on the following by placing a copy of each in the United States Postal Service, first class mail:

Kenda R. Kirby
7493 County Road 73
Coyle, Oklahoma 73027

*Plaintiff* Pro Se

Respectfully submitted,

/s/ Ann W. Matthews
Ann W. Matthews
Special Deputy Attorney General